[No. B168630. Second Dist., Div. Eight. Feb. 15, 2005.]

TAXPAYERS FOR LIVABLE COMMUNITIES et al., Plaintiffs and Appellants, v.
CITY OF MALIBU et al., Defendants and Respondents.

**COUNSEL**

Corin L. Kahn and Linda Thornton for Plaintiffs and Appellants.

Jenkins & Hogin and Christi Hogin for Defendants and Respondents.

**OPINION**

**RUBIN, J.**—Taxpayers for Livable Communities and Jay Liebig appeal from the trial court judgment denying their petition for a writ of mandamus alleging the City of Malibu and its city council violated California's Ralph M. Brown Act, the open meeting law. We affirm.

## FACTS AND PROCEDURAL HISTORY

The California Coastal Act of 1976 (Pub. Resources Code, § 30000 et seq.) (Coastal Act) obligates coastal cities such as Malibu to adopt a local coastal program (LCP) (Pub. Resources Code, § 30500 et seq.). As we discussed in our published decision in *City of Malibu v. California Coastal Com.* (2004) 121 Cal.App.4th 989 [18 Cal.Rptr.3d 40], for many years after becoming a city in 1991, Malibu dragged its feet in developing its LCP. In response, in 2000 the Legislature amended the Coastal Act by adding section 30166.5. The new section ordered the Coastal Commission to write and implement a LCP for Malibu by September 2002. (Pub. Resources Code, § 30166.5, subd. (b).)

In September 2001, the Coastal Commission released for public comment a draft of one component of Malibu's eventual LCP, a land use plan (LUP). In the months following, two of the five members of Malibu's city council, Jennings and House, held a number of private meetings with various individuals, constituents, and city staff to "go over the City's response to the

Coastal Commission's draft LUP." Jennings and House did not invite the general public to their meetings. At the council's regular session in December 2001, Jennings and House submitted to the council their recommendations on how Malibu should respond to the draft LUP. The council did not adopt the recommendations and instead directed that city staff and Jennings and House continue to "negotiate" the LUP with the Coastal Commission. In addition, the council placed the LUP on all future council meeting agendas pending its final adoption by the commission.

A few weeks later, appellants Taxpayers for Livable Communities and Jay Liebig filed a writ petition against Malibu and its city council, alleging the public's exclusion from Jennings and House's meetings violated California's open meeting law, the Ralph M. Brown Act (the Brown Act) (Gov. Code, § 54950 et seq.). They sought a temporary restraining order and judgment ordering Malibu to stop violating the act.[1] Without reaching the validity of appellants' allegations, the court issued a preliminary injunction prohibiting Malibu from any further meetings involving the LCP unless those meetings complied with the Brown Act.

Appellants' petition was tried to the court. After a four-day trial, the court found the Brown Act did not apply to Jennings and House's private meetings because Jennings and House were not a "legislative body." The court dissolved its preliminary injunction and entered judgment for Malibu. This appeal followed.

## STANDARD OF REVIEW

■ We independently review all legal questions and those questions that rest on undisputed facts. (*Alliance for a Better Downtown Millbrae v. Wade* (2003) 108 Cal.App.4th 123, 129 [133 Cal.Rptr.2d 249].) When facts are disputed, we review for substantial evidence the trial court's determination of those facts and their related inferences. (*Saathoff v. City of San Diego* (1995) 35 Cal.App.4th 697, 700–701 [41 Cal.Rptr.2d 352].)

## DISCUSSION

■ The Brown Act requires a quorum of a legislative body to conduct its business in public meetings. (*Los Angeles Times Communications v. Los*

---

[1] As originally pleaded, appellants also sought a judgment declaring the council's actions involving the LUP void, but later abandoned their request.

*Angeles County Bd. of Supervisors* (2003) 112 Cal.App.4th 1313, 1321 [5 Cal.Rptr.3d 776].) The act defines "legislative body" broadly in order to avoid its circumvention. Government Code section 54952 states, " 'legislative body' means: [¶] . . . [¶] (b) A commission, committee, board, or other body of a local agency, whether permanent or temporary, decisionmaking or advisory, created by charter, ordinance, resolution, or formal action of a legislative body. However, advisory committees, composed solely of the members of the legislative body that are less than a quorum of the legislative body are not legislative bodies, except that standing committees of a legislative body, irrespective of their composition, which have a continuing subject matter jurisdiction . . . are legislative bodies . . . ." Appellants contend Jennings and House were a "legislative body" in one of two ways: either as the council's land use and planning committee, or as an "other body." The trial court rejected both characterizations of Jennings and House's meetings. Because, as we explain below, substantial evidence supported the trial court's rulings, we affirm.

### 1. *Land Use and Planning Committee*

Appellants observe that Jennings and House were the sole members of the city council's standing committee for land use and planning. Appellants contend Jennings and House's meetings were thus meetings of that committee. Because the Brown Act applies to standing committees, appellants assert Jennings and House's meetings were subject to the Brown Act. (Gov. Code, § 54952, subd. (b).)

Appellants' contention is unavailing because, as the trial court found, Jennings and House did not meet as members of the land use and planning committee. The land use and planning committee had jurisdiction over planning and zoning code enforcement.[2] It did not, however, have jurisdiction over Malibu's response to the Coastal Commission's LUP for Malibu. The

---

[2] By city council resolution in 1998, the land use and planning committee had "oversight over the Planning Department, Building/Safety Department and the subdivision regulation program within the Public Works Department, with functions in current planning, advanced planning, zoning administration, building regulation, code enforcement and subdivision regulation and representation to the Planning Commission, Local Coastal Plan Committee and Native American Cultural Resources Study Group." Although the resolution refers to a "Local Coastal Plan Committee," that reference did not relate to the Coastal Commission's LCP for Malibu. Instead, it involved a defunct civic committee that had tried to develop an LCP for Malibu before the Legislature stripped Malibu of that power.

city council had instead reserved to itself jurisdiction over the city's response to the commission's plans. Thus, Jennings and House, whether as members of the land use and planning committee or as individual council members, understood they could not act for the city in their meetings to "go over" Malibu's response to the commission's LUP.

Appellants quarrel with the trial court's finding that the land use and planning committee—and by extension Jennings and House as the committee's only two members—lacked jurisdiction over Malibu's response to the commission's LUP. Appellants note that before the Legislature gave the Coastal Commission the power to impose a LCP on Malibu, the council's land use and planning committee had been involved in the city's failed effort to develop its own LCP. We are unpersuaded, however, because at best appellants are pointing to a conflict in the evidence, which the trial court resolved against appellants. In any event, just because the land use and planning committee tried to develop Malibu's *own* LCP does not mean the city council gave the land use and planning committee jurisdiction over the city's response to *the commission's* LUP for Malibu.

### 2. *Other Body*

Appellants contend that even if Jennings and House did not meet as the land use and planning committee, they were nevertheless an "other body of a local agency" subject to the Brown Act. (Gov. Code, § 54952, subd. (b) [Brown Act defines "legislative body" broadly, *including the catch-all "other body"*]; *Joiner v. City of Sebastopol* (1981) 125 Cal.App.3d 799 [178 Cal.Rptr. 299].) The Brown Act applies to any "other body" a local agency creates unless the other body consists of (1) less than a quorum of the local agency's members, and (2) is only advisory. (Gov. Code, § 54952, subd. (b) ["advisory committees, composed solely of the members of the legislative body that are less than a quorum of the legislative body are not legislative bodies"].)

Substantial evidence supports the trial court's finding that Jennings and House were not an "other body." First, the two of them were not a quorum of the council's five members. Second, the city council's directive that they "go over" Malibu's response to the LUP made them no more than an advisory body. Jennings and House could not bind the council because the

council kept for itself all future decisions involving the LUP by placing the plan on its agenda as a permanent item until resolved.[3]

The Attorney General's opinion of what constitutes an advisory body supports the trial court's finding. (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 829 [25 Cal.Rptr.2d 148, 863 P.2d 218] [Attorney General's views on meaning of Brown Act deserve great weight].) The Attorney General's "2002 Handbook on the Brown Act" explains that a city council may designate some of its members to meet with representatives of other entities to exchange information and report back to the council without falling under the Brown Act. To illustrate its point, the handbook offered as an example of an exempt advisory committee "two city councilmembers [named to a committee] for the purpose of producing a report in six months on downtown traffic congestion." The handbook explains that the Brown Act does not apply to the traffic committee because it is a "limited term ad hoc committee" charged with accomplishing a specific task in a short period of time. Change the subject matter from traffic congestion to the Coastal Commission's LUP, and Jennings and House are indistinguishable from the handbook's hypothetical council members.

Disputing the court's finding that Jennings and House were not an "other body," appellants point to other conflicts in the evidence. For example, appellants assert that the council's directive that Jennings and House continue to "negotiate" with the Coastal Commission (after the two members reported they could not recommend that the council accept the commission's LUP) vested Jennings and House with decisionmaking power. Appellants also assert Jennings and House had no duty to periodically report to the council on the progress of their work on Malibu's response to the LUP, as one would expect from an advisory, rather than decisional, body. Appellants also claim the council simply rubber-stamped Jennings's and House's recommendations concerning the LUP, thus making Jennings and House the real decision makers, and as such, subject to the Brown Act. The trial court resolved these conflicts in the evidence against appellants, however, when it found Jennings and House were not an "other body."

---

[3] Appellants argue this conclusion is at odds with the evidence that another council member stated that Jennings and House "are representing our interests." There is nothing inconsistent with two members of the council protecting the city's interests even though the council retains decisionmaking authority. In any event, it was up to the trial court to decide what weight to give the statements of other council members.

## DISPOSITION

The judgment is affirmed. Respondents to recover their costs on appeal.

Cooper, P. J., and Boland, J., concurred.

Appellants' petition for review by the Supreme Court was denied May 11, 2005.